ANDREW HANSON v. HANS HARTSE.[1]

December 2, 1897.

Nos. 10,856—(106).

**Sale—Implied Warranty—Animal Fit for Human Food.**
  Upon a sale of a domestic animal to a retail butcher, engaged in the business of slaughtering such animals and selling their flesh to his customers for their immediate use as food, there is no implied warranty that the animal is fit for food, although the vendor knows the purpose for which the butcher bought it.

Appeal by defendant from an order of the district court for Clay county, Baxter, J., granting a motion for a new trial, unless plaintiff would consent to take judgment for thirty-one dollars, and in case of such consent denying a new trial. Reversed.

*F. H. Peterson*, for appellant.
  If the animal is sold to be consumed by the purchaser the law

1 Reported in 73 N. W. 163.

might imply a warranty of soundness, but not so where the sale is made to a dealer. The distinction is clearly made in Benjamin, Sales (4th Ed.) 878, note; Ryder v. Neitge, 21 Minn. 70; 1 Parsons, Cont. 588, note c; Moses v. Mead, 1 Denio, 378; Howard v. Emerson, 110 Mass. 320. A discussion of the comparative guilt of the parties is futile. If G. S. 1894, §§ 6979, 6982, have any bearing upon the case the parties are equally guilty. It is no more unlawful for appellant to sell the animal than for the respondent to have it in his possession.

*C. M. Johnston* and *J. F. Keene*, for respondent.

There is both an implied warranty, under the circumstances of this case, that the animal sold was fit for food and a statutory liability, analogous and equivalent to a warranty, growing out of and depending upon an act of the legislature enacted as Laws 1869, c. 42, §§ 1, 4 (G. S. 1894, §§ 6979, 6982). The parties in the case at bar are not in pari delicto, and the one in minore delicto may recover. Schermerhorn v. Talman, 14 N. Y. 93, 123; Curtis v. Leavitt, 15 N. Y. 9, 284; Smart v. White, 73 Me. 332; Sackett v. Codd, 18 N. Y. 240, 246; Duval v. Wellman, 124 N. Y. 156; Manchester v. Concord, 66 N. H. 100; White v. Franklin, 22 Pick. 181. Respondent is not entitled to recover the amount in controversy as damages under Laws 1869, c. 42. He is entitled to recover the same amount as purchase price paid on an executed sale illegal because prohibited by G. S. 1894, § 6805. It is clear that there was an implied warranty in the case at bar based on the fact that appellant knew the purpose for which the steer was bought. Shatto v. Abernethy, 35 Minn. 538; Burch v. Spencer, 15 Hun, 504; Sinclair v. Hathaway, 57 Mich. 60; Hoover v. Peters, 18 Mich. 51; French v. Vining, 102 Mass. 136; Grigsby v. Stapleton, 94 Mo. 423; Downing v. Dearborn, 77 Me. 457.

MITCHELL, J.

According to the allegations of the complaint, as well as the uncontradicted evidence, the plaintiff was a retail butcher whose business was to buy and slaughter cattle, and sell the meat to his customers to be by them used for food. The defendant was a farmer and the owner of a fat steer. The complaint alleges that plaintiff bought the steer of the defendant for the purposes of his business;

that at the time of the purchase the animal was affected with the disease known as "lumpy jaw," and was wholly worthless and unfit for food, all of which facts were well known to the defendant; but that defendant, well knowing the diseased condition of the steer and the purposes for which the plaintiff was buying it, did wrongfully, and for the purpose of deceiving the plaintiff, withhold and conceal from plaintiff the fact that the animal had "lumpy jaw," but on the contrary did, with intent to defraud the plaintiff, misrepresent to him the true condition of its health, thereby inducing him to purchase it. This action was brought to recover damages, measured by the sum paid for the steer and the expenses of employing a veterinary surgeon to examine the animal and of destroying its carcass.

It will be observed that the action was essentially one of tort for fraudulent representations as to the condition of the animal and the fraudulent concealment of its diseased condition. There was neither allegation nor proof of any express warranty that the animal was fit for human food.

The evidence was undisputed that the animal had the disease known as "lumpy jaw" and hence that its flesh was unwholesome and wholly worthless for food; also that plaintiff and defendant both knew before the sale that it had a lump on one of its jaws which plaintiff himself examined before he made the purchase. We think the evidence was also conclusive that defendant knew the purposes for which plaintiff was purchasing the steer. Assuming, without deciding, that the evidence would have justified the jury in finding that the defendant knew or had good reason to believe that this lump was the result of the disease called "lumpy jaw," and that the flesh of the animal was unwholesome, and fraudulently concealed this fact from the plaintiff for the purpose of inducing him to buy, yet the evidence on that point was certainly not conclusive. Neither was that question submitted to the jury.

The court submitted the case to the jury exclusively upon the theory that there was an implied warranty on part of the defendant that the meat of the animal was fit for domestic use, and instructed them that if they found that the meat was diseased and unfit for use as food (upon which the evidence was undisputed) the

plaintiff would be entitled to recover, unless they also found that at the time of the sale he was advised by the defendant that the animal had a disease that made the meat unfit for the purposes for which the plaintiff intended to use it. As there was no evidence that the defendant so advised the plaintiff, the charge of the court amounted to an instruction to find for the plaintiff, which the jury did. Hence the charge of the court can only be sustained upon the ground that on the facts there was an implied warranty on part of the defendant that the animal was fit for food.

The doctrine of an implied warranty on the sale of articles intended for food, if it exists at all, does not extend beyond the case of a dealer who sells provisions directly to the consumer for domestic use. It does not extend to sales between dealers, whether wholesale or retail, or to sell again and not for consumption by the immediate buyer.

We are not aware of any well-considered case to the contrary. While there are expressions in some of the cases which seem to favor a contrary rule, yet we think that an examination will show that in most of them it appeared that the seller knew or had reason to suspect at the time of the sale that the article was unsound and unfit for food, and concealed that fact from the buyer, and hence that the action was really one for deceit and not on a warranty. Indeed, it has been urged by able authorities that the doctrine of an implied warranty, even in the sale of provisions by a dealer to the immediate consumer, had its origin in the United States in a misconstruction of the meaning of the language used in 3 Bl. Com. 165, the claim being that the author only had reference to an action for deceit. And Mr. Benjamin in his work on Sales (section 670 et seq.) argues very forcibly that in England the responsibility of a victualler, butcher or other dealer in articles of food to the immediate consumer for selling unwholesome food was one imposed by statute, and did not arise out of any contract of implied warranty.

There may be considerations of public policy which should take sales by dealers in provisions for immediate consumption by the purchaser out of the general rule of caveat emptor, but the exception to the rule certainly does not extend beyond that. This is not a new question in this court. Ryder v. Neitge, 21 Minn. 70. See

Howard v. Emerson, 110 Mass. 320; Gieroux v. Stedman, 145 Mass. 439, 14 N. E. 538; Benjamin, Sales, Am. note, pp. 647, 648.

We are referred to G. S. 1894, §§ 6805, 6979, 6982, as changing the common-law rule, but we find nothing in them that has any bearing on the question.

Order reversed.