Mary N. Salmon, Executrix, v. Libby, McNeil & Libby.

Gen. No. 11,300.

1. NEW CAUSE OF ACTION—*when; not set up in additional or amended count.* A new cause of action is not stated in an amended or additional count where its allegations consist of a mere restatement of the cause of action originally set up, and a demurrer to a plea filed to such a count will be sustained.

2. FOOD STUFFS—*liabilities of dealers in, for injuries resulting from use of.* Where the cause of the injury is not in its nature inherently dangerous (in this case it was mince meat), and, where there is no fraud, concealment or implied invitation, and where the plaintiff is not in privity of contract with the defendant, a right of action does not exist.

Action on the case for death caused by alleged wrongful act. Error to the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed May 26, 1904.

MERRIAM & PHELPS, for plaintiff in error.

ALBERT H. & HENRY VEEDER and LOUIS C. EHLE, for defendant in error.

MR. JUSTICE WINDES delivered the opinion of the court.

The testator of plaintiff in error was poisoned, as it is claimed, from eating a part of a mince pie made by one Sarah Hoffman from a can or package of mince meat manufactured and put up by defendant in error, and died, as a result of such poisoning, in the State of Kansas on November 12, 1899. This suit was brought in August, 1901, against defendant in error, under the statute of Kansas, which is similar to the statute of this state, to recover damages for the benefit of the widow or next of kin. After demurrer to the original declaration, consisting of three counts, was sustained, an amended declaration was filed June 10, 1902, a demurrer to which was also sustained and a second amended declaration was filed December 3, 1902, to which, after demurrer thereto had been overruled, a plea of the general issue and two pleas of the

Statute of Limitations of two years were interposed. By agreement the general issue was withdrawn, and the court overruled plaintiff's demurrer to said pleas of the Statute of Limitations, and the plaintiff having elected to stand by said demurrer, the court rendered judgment against the plaintiff and in favor of defendant, to review which this writ of error is prosecuted.

The general question presented is whether the court erred in overruling the demurrer to the defendant's pleas of the Statute of Limitations, which involves the determination of whether the original declaration states a cause of action. It was held by the Superior Court, and that ruling is not in question here, that the second amended declaration states a cause of action. If it is a mere restatement of the cause of action stated by the original declaration, (assuming that it states a cause of action), then it was error to overrule the demurrer to said pleas, there being no question made as to their sufficiency in any other respect; but if the original declaration states no cause of action, then that ruling is correct. Eylenfeldt v. Ill. Steel Co., 165 Ill. 185; Swift v. Madden, 165 Ill. 41–5; Ill. C. Ry. Co. v. Campbell, 170 Ill. 163; Foster v. St. Luke's Hospital, 191 Ill. 94, and cases cited; Doyle v. City of Sycamore, 193 Ill. 501–5; C. & E. I. R. R. Co. v. Wallace, 202 Ill. 129–36, and cases cited; Field v. French, 80 Ill. App. 78–89.

In the Swift case the Supreme Court held that where the cause of action in the original declaration is the same as that stated in the amended declaration filed after the Statute of Limitations had run, the statute was not a bar, although the original declaration was defective and the defect was cured by the amended declaration—in substance, that where the amended declaration was but a mere restatement of the cause of action defectively stated in the original declaration, the statute was not a bar.

In the Doyle case the Supreme Court, referring to previous decisions, including, among others, the Eylenfeldt and Campbell cases, say : "If the original declaration states no cause of action whatever, and the amended counts do,

the latter must be treated as filed at the time the amendment was made. A cause of action being stated then for the first time cannot escape the bar of the Statute of Limitations by being filed as an amendment." Such being the well settled law, it only remains to be considered whether a cause of action is stated by the original declaration.

Omitting the formal commencement and conclusion of the first and second counts, and the allegations of special damages, they are abstracted as follows:

"For that the defendant in the lifetime of the said John T. Salmon, on, to wit, the 12th day of November, A. D. 1899, at the County of Cook and State of Illinois, were, and for a long time previous thereto had been manufacturers and vendors to the public, of a certain article of food called and known as ' Premier Brand Condensed Mince Meat,' in the name of the Emery Provision Co., and guaranteed to be absolutely pure mince meat, as a proper and wholesome article of food; and previously thereto had sold and delivered with other packages of said mince meat to a certain wholesale dealer in meats and provisions, then and there doing business under the name of Swift & Co., to be resold by them in the regular course of their business, a certain package of said condensed mince meat so manufactured, compounded, guaranteed to be pure and wholesome, and put upon the market by them as a wholesome article of food; and that said Swift & Co. thereafter there and then sold and delivered the said package of mince meat in the regular course of their business to one Benjamin F. Hoffman, a dealer in groceries and provisions in Kansas City, in the County of Wyandotte and State of Kansas; that thereafter the said Benjamin F. Hoffman, then and there at Kansas City, aforesaid, to wit, at Cook county, sold and delivered said package of mince meat in the regular course of his trade and business to a customer named Sarah E. Hoffman for use and consumption; and that said Sarah E. Hoffman then and there made said package of mince meat, or part of the same, into a pie, commonly called a mince pie, being the use for which the same was compounded, manufactured and put upon the market by the said defendant. And that thereupon it became and was the duty of the defendant then and there to manufacture, compound, put up and sell to the trade, for public use as food as aforesaid, only such mince meat as was pure and wholesome, and not poisonous or

Salmon v. Libby, McNeil & Libby.

destructive to human life when the same should be duly prepared for use and used as food; and to put the same up in such reasonable and safe envelopes that the same should be and continue pure, safe and wholesome as food, and not become poisonous and destructive to human life while the same should be and remain in the hands of dealers awaiting sale to customers for use and consumption, as aforesaid. Nevertheless the said defendant did not regard its duty, or use due care in that behalf, but on the contrary so negligently, carelessly, unskillfully and improperly manufactured, compounded and put up for sale and sold to the trade for public use, as aforesaid, the said package of mince meat sold and delivered as aforesaid, by the defendant to said Swift & Co., and by said Swift & Co. to said Benjamin F. Hoffman and by said Benjamin F. Hoffman to said Sarah E. Hoffman, and by Sarah E. Hoffman made into a pie and duly prepared for food, as aforesaid, and that the same then and there became and was poisonous and destructive to human life; and the said John T. Salmon, partaking of the same when so prepared, as he lawfully might, was then and there poisoned and died in consequence thereof.

Second count. Also for that, whereas, the said defendant, in the lifetime of the said John T. Salmon and before and at the time of committing the several grievances next hereinafter mentioned, was a manufacturer and dealer in mince meat, so-called, under the name and style of the Emery Provision Co., at Cook County at the State of Illinois, and manufactured and put upon the market for sale and public use a certain brand of mince meat called, known and described as 'Premier Brand of Condensed Mince Meat,' put up in small paper or pasteboard packages, each represented to contain sufficient mince meat for two large or three small pies, and guaranteed by the said defendant to be absolutely pure mince meat; as and for a proper and wholesome article of food, and did on, to wit, the 1st day of November, A. D. 1899, sell and deliver to one Swift & Co., a dealer in meats and provisions, to be resold by said Swift & Co. in the due and regular course of their business, a certain package of said condensed mince meat so as aforesaid by them manufactured, sold, delivered and guaranteed, and that said Swift & Co. thereafter then and there sold and delivered said package of mince meat in the regular course of their business and dealing to one Benjamin F. Hoffman, a retail dealer in groceries and provisions, doing business as such at Kansas City in the county of Wyandotte

and State of Kansas, to wit, at said Cook county, and that said Benjamin F. Hoffman thereafter, on, to wit, the 9th day of November, A. D. 1899, sold and delivered the said package of mince meat in the regular course of his trade and business to one Sarah E. Hoffman, for use for food in and about her household affairs; that said Sarah E. Hoffman thereafter at said Kansas City, then made said package of mince meat, or part of the same, into a pie, whereof said John T. Salmon, testator of the plaintiff, of the aforesaid partook and did eat, as he properly might without fault or negligence on his part. And that it was then and there the duty of the said defendant to so manage and conduct its said business that only mince meat so manufactured by it and so put up and offered for sale and sold by it and put upon the market for sale and use by the public, as aforesaid, should be pure and wholesome for consumption as food, and put up in packages, or in a manner suitable to keep and preserve such mince meat in a pure and wholesome condition for food for whomsoever should become a purchaser thereof and use the same for food, and until it should reach the consumer in and through the usual channels and course of business and trade. Nevertheless the said defendant, not regarding its duty in this behalf, so carelessly, negligently, unskillfully and improperly conducted their said business, and the making, compounding and putting up for sale of said mince meat, that by and through the carelessness, negligence, unskillfulness and default of itself and its servants in the selection of the materials used in the manufacture of said package of mince meat, and in the enveloping and putting the same up for sale and use as food as aforesaid, that afterwards and when the said mince meat had been duly and properly made into a pie and used as food it was found to be and was unfit for food and unwholesome and a deadly poison and destructive to human life, and being so, as aforesaid, partaken of on the day and year last aforesaid, at said Kansas City, to wit, at said Cook county, by the said John T. Salmon, the plaintiff's testator, caused him to sicken and die by reason thereof on, to wit, the day and year aforesaid, at Kansas City, aforesaid."

The third count is similar to the first and second counts, except it alleges "that the said package having come to the hands of one Benjamin F. Hoffman in the usual course of his trade of retail dealer in groceries and provisions, at

Kansas City in the County of Wyandotte and State of Kansas, was by him sold to one Sarah E. Hoffman of the same place, for consumption and use as food in her family, and was by her duly prepared for food and made into a pie, whereof the said John T. Salmon partook as he lawfully might, believing said pie to be fit and wholesome, on, to wit, the 12th day of November, A. D. 1899, at Kansas City, to wit, at Cook county, and was then and there poisoned and made sick thereby and died in consequence thereof, and because of the carelessness and negligence of the said defendant and their servants in the preparation of and compounding and enveloping of the said package of mince meat and the putting of same on the market as a pure and wholesome article of food."

Each count of the original declaration is based upon the statute of Kansas, which is set out in each count; and the cause of action attempted to be set out is predicated upon the provision of the statute which permits a recovery by the personal representatives of a deceased person for the benefit of the widow and children, if any, or next of kin of such person when his death has been caused by the wrongful act or omission of another. The cause of action thus attempted to be stated in these counts is purely statutory, and is not and cannot be based upon any alleged guaranty or warranty stated in the declaration. Hence all allegations in that regard are immaterial and need not be further referred to in determining whether they state a cause of action. In fact the learned counsel of plaintiff in error say in their brief that " the cause of action in the case at bar is the loss and injury caused by the death of plaintiff's testator, resulting from the negligence of the defendant." The question is thus narrowed to the inquiry whether the declaration alleges facts sufficient to show that the defendant in error was guilty of actionable negligence.

Counsel for plaintiff in error seem to argue, though they do not state it in so many words, that the defendant is liable because it made a misrepresentation in regard to the mince meat in question—that it guaranteed that the meat

was pure and wholesome, when the fact is that it was impure, unwholesome, poisonous and dangerous to human life. This argument is untenable, for the reason that if it be conceded that the declaration positively alleges that the defendant represented the mince meat to be pure and wholesome, neither count of the declaration alleges that this representation was untrue or false. Neither is it alleged in either count that plaintiff's testator, or any one of the dealers in mince meat who purchased and sold it, or through whose hands the package in question passed, had any knowledge or information as to the alleged misrepresentation of the defendant, unless it may be inferred that Swift & Co., the original purchaser from defendant, knew of it. There is no direct allegation to that effect. Therefore no duty on the part of the defendant based upon the alleged misrepresentation could be said to exist toward plaintiff's testator differing from its duty toward the general public, if any. There is no allegation of fact in the declaration showing that defendant owed any duty to the general public which was violated, or that it was in any way negligent. It does not appear from the declaration when the mince meat in question was manufactured, nor how long a time elapsed between its sale to Swift & Co. and the time it came to the hands of Sarah Hoffman, nor what care of it, if any, was exercised by the different persons through whose hands it passed until it was eaten by plaintiff's testator. If the meat was pure and wholesome, as it is claimed the defendant represented (and this must be assumed since the contrary is not alleged), before defendant could be said to be negligent, it should appear from allegations of fact, not mere conclusions of the pleader, that it did or omitted to do something which was negligent. There is no sufficient allegation in this regard. The first count, it is true, alleges that the defendant "so negligently, carelessly, unskillfully and improperly manufactured, compounded and put up for sale and sold to the trade for public use" the said package of mince meat, etc., "and that the same then and there became and was poisonous and destructive to

human life." The count does not allege that the negligent, unskillful and improper manufacture of the mince meat caused it to become poisonóus and destructive to human life. For all that appears from any allegation in the count, it may have become poisonous and destructive to human life by reason of some act or acts or omission to properly care for the meat by some one of the different persons through whose hands it passed before it came to plaintiff's testator, and without any fault or neglect of the defendant. The same is true, in substance, in this regard of the second count. The third count is slightly different, but we think it fails to allege that the death of plaintiff's testator was caused by any negligence of the defendant. It has the same allegation of negligence with regard to the manufacture and putting up of the meat in question as the other two counts, but does not allege that the death of plaintiff's testator was caused thereby. It is elementary that before a defendant can be held liable for negligence it must appear that such negligence caused the injury sued for.

The principal argument of plaintiff's counsel is directed to the question as to whether it was necessary to allege, in the declaration, that the defendant had or should have had knowledge that the mince meat in question was not pure and wholesome; that it being alleged that the defendant was a manufacturer and put upon the market this mince meat, guaranteed to be pure and wholesome as an article of food, it was a legal inference from these and the connected allegations of the declaration, that it knew or by the exercise of reasonable diligence might have known that the mince meat was dangerous to human life, unless made of proper materials, and was properly manufactured and enveloped. Especial reliance seems to be placed upon the cases of Thomas v. Winchester, 6 N. Y. 397, and Bragdon v. Perkins & Co., 87 Fed. R. 109. Other cases are cited, including Blood Balm Co. v. Cooper, 83 Ga. 457–61, Wiedeman v. Keller, 171 Ill. 93, and Bishop v. Weber, 139 Mass. 411–17. The cases of Thomas and Cooper relate to sales of dangerous and poisonous drugs and medicines, as to

which a different rule applies from articles of food. The Thomas case also has the element of fraud, and both cases are based upon the fact that the drugs and medicines are *per se* dangerous to human life. The Bishop case is that of a caterer who served food directly to the injured person, who paid for it. In such a case a different rule applies, as was determined in the Wiedeman case by our Supreme Court. The Bragdon case was for negligence in a sale to the plaintiff by defendant of a saddle alleged to have been negligently and unskillfully made. There being no warranty, deceit or fraud on the part of the defendant, the court, in a very thoroughly considered opinion, reviewing the English and American authorities, held that there was no liability, and specially distinguishes the case from the Thomas case, *supra.* We think it very different from the one at bar, mainly in the fact that the plaintiff, by her agent, dealt directly with the defendant, whereas here the plaintiff's testator is in no way connected with the defendant. If the case could be said to have any bearing on this case, it is against any liability of defendant, because the saddle, like the mince meat, is not inherently dangerous as is the case of drugs and medicines.

The rule as to drugs and medicines is stated in 15 Am. & Eng. Enc. Law, (2d ed.,) p. 1239, as follows : " In the sale of drugs, medicines or chemicals, the rule *caveat emptor* does not apply if the purchaser is not an expert and buys in reliance upon the knowledge and skill of the druggist. In such case there is an implied warranty that the thing is what it purports to be, fit for the use to which it is usually put or for which a druggist has recommended it, and that it is not another or more dangerous drug than the one called for by the purchaser. For a breach of this warranty the druggist is liable in damages, and if he sells as a harmless drug a dangerous and poisonous one he is liable for any injuries that follow, even though such a sale was to a dealer who sold again to the person injured, relying on the knowledge, skill, and representations of the original seller." This statement of the law is, we think, supported by the

authorities above referred to, as well as by Schubert v. Clark Co., 15 L. R. A. 818, and cases cited; McCaffrey v. Mossberg Co., 23 R. I. 381, and cases cited; Benjamin on Sales, secs. 431 and 668, and p. 647 (6th Am. ed.); Norton v. Sewall, 106 Mass. 143, and cases cited.

In the Wiedeman case the action was on an implied warranty by Keller, a retail dealer, who sold certain meat to Weideman for domestic use in her family. The court discussed quite fully the authorities, and said : " As a general rule, we think the decided weight of authority in the United States is, that in all sales of meats or provisions for immediate domestic use by a retail dealer there is an implied warranty of fitness and wholesomeness for consumption. There is, however, no implied warranty of soundness or wholesomeness arising from the sale of meats or provisions to a dealer or middleman who buys on the market, not for consumption, but for sale to others." The court also said : " Where articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased." It was held that the retail dealer was liable to a purchaser dealing directly with him upon the ground of an implied warranty. As we have seen, the case at bar does not proceed, in the original declaration, on the ground of warranty, express or implied, but of negligence only.

The Schubert case, decided some twelve years ago by the Minnesota Supreme Court, involved the question of liability of the manufacturer of a ladder sold by him to the trade to be used for general purposes, and made of defective material so varnished and painted that the defects could not be discovered, and which caused an injury to a third person who had no contract relation with the manufacturer. The question was presented upon demurrer to the complaint,

which, among other things, alleged that the defendant, the manufacturer, knew or ought to have known of the defects and insufficiency of the ladder. The court reviewed a number of the authorities above cited, with others, and held that " when the defendant manufactured and put the dangerously faulty article in its stock for sale," he was therein negligent and was liable to an action for such negligence, it being the proximate cause of injury to the plaintiff, without any reference to any contract relation existing between him and the plaintiff, there being no intervening wrongful agency from which the injury in question could have resulted. The Norton case was a sale by an apothecary of deadly poison as and for a harmless medicine, and is within the principle of the Thomas case, *supra*.

The McCaffrey case was where an employee of a manufacturing jeweler was injured by a defective machine sold to the latter by the manufacturer of the machine, the injury being alleged to have been caused by negligence in the original construction of the machine. The question arose on demurrer to the declaration, was decided in 1901, and is the latest case to which our attention has been directed. The court made a very thorough review of the cases, English and American, held that the demurrer was properly sustained, and said : " We think that the result of the cases on this subject clearly establishes the weight of authority in favor of the rule that where the cause of the injury is not in its nature imminently dangerous, where it does not depend upon fraud, concealment or implied invitation, and where the plaintiff is not in privity of contract with the defendant, an action of negligence cannot be maintained." The declaration in that case alleged " that the defendant knew, or had reason to know, and, but for want of reasonable care, would have known, that the machine, when it was sold, was a dangerous appliance, liable to endanger the life and limb of an operator using due care," etc. The court did not consider the question of the knowledge of the defendant as being an element necessary

to establish liability, but holds that in this class of cases (in which the court includes, among others, the Bragdon case, *supra*) "there is no general or public duty, but only a duty which arises from contract, out of which no duty arises to strangers to the contract." We are inclined to the view that, as a general rule, this statement of the law is supported by the weight of authority. See Craft v. Parker, 96 Mich. 245; Heizer v. K. & D. Mfg. Co., 110 Mo. 605–12, and cases cited; Standard Oil Co. v. Murray, 119 Fed. Rep. 572; Hanson v. Hartse, 73 N. W. Rep. 163; Buckingham v. Plymouth Water Co., 142 Pa. St. 221; Sheffer v. Willoughby, 163 Ill. 518–22; Giroux v. Stedman, 145 Mass. 439. This being so, and this case not being an exception to the rule stated, the allegation of the defendant's *scienter* would not aid the plaintiff's case. The allegation of *scienter* only seems necessary in cases based upon fraud and deceit, such as the Schubert and Thomas cases, *supra*, which is not claimed in the case at bar.

The original declaration being predicated upon the defendant's negligence, and mince meat not being in its nature "imminently dangerous," there being no allegation of "fraud, concealment or implied invitation" to the plaintiff's testator, and it not being alleged there was any contract relation between said testator and defendant, we are of opinion it states no cause of action. And we deem it unnecessary to hold that the *scienter* of the defendant is a necessary allegation to show a cause of action. It follows that there was no error in overruling the demurrer of plaintiff in error to the pleas of the Statute of Limitations to the second amended declaration.

The judgment of the Superior Court is affirmed.

*Affirmed.*