ADOLPH ARONS et al. *vs.* SAMUEL CUMMINGS.

. Penobscot.    Opinion June 30, 1910.

*Sales.   Acceptance by Buyer.   Breach of Contract by Buyer.   Goods Sold and Delivered.   Special Assumpsit.*

Where a buyer ordered clothing to be delivered "on or about September 1st, 1908," and the goods were shipped so that they arrived at destination August 11th, though the buyer had expressly stated to the seller that he would have no room for the goods in his store before September 1st, and, in reply to the seller's notice that they had been shipped, promptly refused to accept them, the sellers in return assuring him that the order called for September 1st delivery, that the bill was so dated, and that he had no cause for complaint and the goods were burned August 17th in a freight shed of the common carrier, *held* that there was no acceptance by the buyer, the premature shipment being a breach of the terms of the order.

The prima facie evidence of acceptance by the buyer arising from a delivery to the carrier as the buyer's agent being overcome by the positive refusal of the buyer to accept the goods, which refusal was justified by the premature and unauthorized shipment, *held* that the sellers could not recover for the goods as for a breach of contract.

An action for goods sold and delivered cannot be maintained without proof of an actual delivery to and acceptance by the buyer.

For the refusal to accept goods sold and tendered to the buyer according to the contract, the remedy of the seller is an action of special assumpsit for a breach of the contract of bargain and sale.

On report.   Judgment for defendant.

Assumpsit on an account annexed to recover $413 for clothing alleged to have been sold and delivered by the plaintiffs to the defendant.   Plea; the general issue.   At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*B. L. Fletcher*, for plaintiffs.

*B. W. Blanchard, and W. P. Thompson,* for defendant.

SITTING :   EMERY, C. J., WHITEHOUSE, PEABODY; CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J.   This was an action of assumpsit on an account annexed to recover the sum of $413, for clothing alleged to have been sold and delivered by the plaintiffs, who were doing business in New York, to the defendant who was doing business in Bangor, Maine.   After the evidence had been introduced, the writ was amended by the insertion of two additional counts, one for goods bargained and sold and one for a breach of contract for non-acceptance.   The case is reported for the decision of the Law Court.

On the 4th day of May, 1908, the defendant gave a written order to the plaintiff's agent, for a quantity of winter clothing of the value above stated, to be delivered "on or about September first, 1908," and shipped by the Maine Steamship Company to Portland, thence by the Maine Central Railroad to Bangor.   The goods sued for were delivered to the Maine Steamship Company for shipment to Portland August 1, 1908.   They arrived in Bangor, August 4th, 1908, and were burned August 17, 1908, in a freight shed of the Maine Central Railroad Company.   By the terms of the sale the goods were to be paid for within sixty days from September 1st, and if paid for in ten days from that date, a discount of seven per cent was to be allowed.

On the 31st day of July, 1908, the defendant received notice by letter from the plaintiffs that the goods would be shipped the next day.   The defendant promptly replied under the same date saying, "We cannot keep the goods now as we told you not to send them

before September 25. Please advise us what to do about it." To this note the plaintiffs replied under date of August 4, saying "We have looked over your copy of order and the instructions call for September first delivery, and you will notice that the bill is dated September first, you therefore have no kick coming. Hoping this will be satisfactory to you, we remain," etc. August 19, 1908, the defendant notified the plaintiffs by letter that the goods had been burned in the Maine Central freight shed, and suggested that the plaintiffs put in their claim at once. To this the plaintiffs replied under date of August 24, saying, "We are sorry that we cannot make any claim against the Maine Steamship Company for the reason the goods were consigned to you and we were the shippers and the goods does not belong to us any more." Under date of August 28, 1908, the plaintiffs addressed the following letter to the defendant, namely; "We have received today a letter from B. W. Blanchard of your city and we are very much surprised that you have given this over to an attorney. There is no necessity for that as we never expected to sue you for it. If you do not want to bother yourself regarding this shipment, please return the bill of lading and we will make the claim at this point. Hoping this will meet with your satisfaction, we remain," etc. The plaintiffs accordingly presented their claim against the railroad company, but the case is silent as to the result.

The goods in question were designed for winter clothing and the defendant expressly stated to the plaintiffs at the time the order was given on the 4th day of May, that he did not wish to have the goods delivered until September first, for the reason that he then had in stock in his small store, all of his spring and summer goods and would have no room for winter goods before September first.

It is conceded by the plaintiffs that Maine is one of the states in which an action for goods sold and delivered cannot be maintained without proof of an actual delivery to and acceptance by the purchaser, and that for a refusal to accept goods sold and tendered to the purchaser according to the contract, the remedy is an action of special assumpsit for a breach of the contract of bargain and

sale. See *Atwood* v. *Lucas*, 53 Maine, 508; *Greenleaf* v. *Gallagher*, 93 Maine, 549; *Greenleaf* v. *Hamilton*, 94 Maine, 118. But the plaintiffs claim that their case falls within the rule, which is also the settled law of this State as well as in Massachusetts, that when a delivery is made to a common carrier according to the stipulation in the contract, the carrier is thereby made the agent of the buyer and such delivery to the carrier implies an acceptance and is prima facie sufficient to pass the title and enable the seller to maintain an action for goods sold and delivered. In support of this proposition the plaintiffs' counsel cites *White* v. *Harvey*, 85 Maine, 212; *Lombard Co.* v. *Paper Co.*, 101 Maine, 114; *Cox* v. *Anderson*, 194 Mass. 136; *Medicine Co.* v. *Johnson*, 178 Mass. 374; *Wigton* v. *Bowley*, 130 Mass. 252.

But it is equally well established both upon reason and authority that this presumption of acceptance arising from delivery to a carrier is only prima facie evidence and that the rule is not applicable when it appears that the goods are not according to the contract, or that the seller has failed to act in conformity with the authority given him by the buyer, respecting either the method of shipment or the time and place of delivery. In commenting upon this rule in *White* v. *Harvey*, 85 Maine, supra, PETERS, C. J., says: "The delivery at a place agreed is for the buyer's accomodation. Instead of his taking the goods they are sent to him at his direction. Then the seller's responsibility is ended, and an acceptance is implied. The buyer, in effect, agrees that such delivery shall operate as a complete transfer of the property. The buyer is not, however, precluded from the right of inspection or examination, unless such right has been previously exercised, and of subsequently objecting that the goods are not according to the contract. To that extent the acceptance may be considered as conditional."

So if the delivery or shipment is not made in accordance with the terms of the order or the stipulation in the contract between the parties, it is not considered that the delivery is made to the buyer's agent and the title and risk remain in the seller. 24 A. & E. Enc. of Law, 1071-4, and cases cited. In *Soper* v. *Creighton*, 93 Maine, 564, the contract contemplated a prompt delivery to a carrier in

Boston, of goods consigned to the defendants at Thomaston, but such delivery was never made, and the court said : "The defendants might well cancel their order, or which is the same thing, refuse to receive the goods not shipped for a month after they should have been. . . . The title to the goods did not pass to the defendants, nor were the goods seasonably shipped so as to enable the plaintiffs to have damages." See also *Rhoades* v. *Cotton*, 90 Maine, 453.

So with respect to premature delivery, the title does not pass unless such disregard of the terms of the order is waived by acceptance. The buyer is not bound to accept delivery before the time specified. 24 A. & E. Enc. of Law, 1074, and cases cited. In *Maddox* v. *Wagner*, 111 Ga. 146 (36 So. E. 609) the defendant in error was not authorized by the terms of the order to ship the goods from New York to Atlanta until he was notified so to do by the plaintiffs. "When therefore" said the court by C. J. Lumpkin, "he made the shipment without being so notified, he took the risk of acceptance by the plaintiffs. Certainly he had no right to compel their acquiescence in a shipment made in the teeth of the contract, and necessarily shipped the goods at his risk."

In the case at bar it has been seen that by the terms of the defendant's order, the goods were to be shipped "on or about September 12, and the plaintiffs do not deny the statement made by the defendant in his letter of July 31, that he had told the plaintiffs "not to send them before September 25." Thus assuming that the indefinite phrase "on or about" employed in the order might reasonably admit of a departure of several days or a week either way from the first day of September, the plaintiffs well understood that the defendant preferred that this variation should be in the direction of a later instead of an earlier date. Furthermore the language of the plaintiffs' reply of August 4, saying that "the instructions call for September 1st, delivery, that the bill is dated September 1, and that "you therefore have no kick coming," clearly implies that the plaintiffs did not claim that under the terms of the order they had the right to ship the goods before September 1st. It was equivalent to an assurance that they did not expect the defend-

ant to accept the goods before September 1st, that they had shipped them as a matter of convenience to themselves and at their own risk, and that the defendant was in the same position that he would have been if the order had definitely fixed the first day of September as the time for delivery, and the goods had not been shipped until that date.   It was a distinct waiver of any claim that delivery to the carrier thirty days earlier might be deemed a compliance with the terms of the order.   And this view is confirmed by the plaintiffs' letter of August 28, in which they frankly state that they never expected to sue the defendant, and by their claim against the Maine Central Railroad to recover the value of the goods.

It satisfactorily appears from all the evidence that the time of delivery was mutually understood by the parties to be an essential element in their contract, and the conclusion is irresistible that the shipment made thirty days before the date named in the order was manifestly premature and in contravention of the terms of the order reasonably interpreted.

It is therefore obvious that the plaintiffs' action cannot be maintained on the original count for goods sold and delivered, for the reason that the defendant not only never received the goods in fact but expressly refused to accept them at that early date.   It is equally obvious that the action cannot be maintained for a breach of contract for not accepting the goods, because the prima facie evidence of acceptance arising from a delivery to the carrier, as the defendant's agent, is entirely overcome by the positive refusal of the defendant to accept the goods, and the fact that he was justified in this refusal by a premature and unauthorized shipment which did not operate to pass the title to the defendant.

The certificate must therefore be,

*Judgment for defendant.*