## Eli H. Hoover et al. v. Jacob Peters.

*Sale of articles of food for domestic consumption: Implied warranty as to quality.*
Where articles of food are bought for domestic consumption, and the vendor
sells them for that express purpose, the law implies a warranty that they are
fit for such purpose, whether the sale be by a retail dealer or any other person.

*Heard January 6th.   Decided January 11th.*

Error to Bay Circuit.

This was an action to recover the balance of the purchase
price of certain pork sold by plaintiff to defendant.

The defence claimed that the pork was purchased to be
used as food, and that the plaintiff so understood it, and
that it proved unfit for such purpose.

On the trial they asked the Court to charge the jury
that if the facts were as claimed, that there was an implied
warranty that the pork was sound, and fit for the purpose
of food; but which was refused.

Judgment was rendered for plaintiff.

*A. C. Maxwell,* for plaintiff in error.

The record in this case presents the following:

I. When a farmer sells provisions to a consumer directly
for food, is there an implied warranty that the goods are
wholesome and fit for that purpose?

That such warranty exists has been held by repeated ad-
judications in this country.—*12 Johns. 468; 2 Chandler,
Wis. 37; 3 Blackf. 165; 17 Wend. 267.*

Where a vendee buys for a particular purpose, he buys
with an implied warranty of the *fitness of the thing, for the
purpose intended,* whether the article is for food or not.—
*6 Taunt. 108; 4 Barn. & Cress. 108; 5 Bing. 533; 3 Man.
& Grang. 818; 8 Blackf. 317; 2 Man. & Grang. 279;
3 Id. 858; 5 Q. B., 288. Similar cases: 4 Gilman, 69;
1 Sm. & M. 381; 17 Wend. 269; 18 Id. 449; 10 Exchq. 342;
1 Williams, 227; 11 Ired. L. 166.*

If the rule is well settled, that when a person buys goods for a *particular purpose*, that there is an implied warranty that the goods are fit for such purpose, why should not such rule extend to provisions? The reasons that may be alleged in favor of such rule are certainly strong. The security of human life is the greatest care of the law. The necessities of life are such as to make it important that food should be wholesome and unadulterated; and the same principle that holds a physician or apothecary responsible for reasonable care, might well sustain this rule of law.

II. *What* is a warranty, is purely a question of law. And the Court must decide it. It is a contract in every respect, as fully as any other contract known in the law.—*22 Pick. 48; 1 Vesey, Sr., 95; 14 Barb., 66; 1 Young, 407; 2 Kent's Comm. 482 et seq.; 1 Smith's Lead. Cas. 77, 207.*

Whether a warranty has been proved in a particular case, is a question of fact for the jury; but *what facts*, if proved, will make a contract of warranty, is a question of law.

In the facts shown in this case, the agent of the plaintiff (below) *did* make an express warranty of the property, as a matter of law.

It was a representation of an important fact at the time of sale, and during the negotiation, to purchase it.

It clearly appears that the goods were purchased for a particular purpose, of which the plaintiff was informed.

*Grier* and *McDonell*, for defendant in error.

With regard to the quality or goodness of articles sold, the seller is not bound to answer, unless he expressly warranted the goods to be sound and good, or made a fraudulent representation or concealment. The buyer is required to attend to those qualities of the article he buys, which are supposed to be within the reach of his observations and judgment; and this doctrine is well established in the English and American law.—*2 Kent Com. 478 (10th Ed.); 20 Johns.*

*196 ; 13 Ohio, 502 ; 39 Penn. St. 88 ; 42 N. H. 165 ; 23 Barb. (N. Y.) 521 ; 29 Maine, 508.*

Those cases which "trench upon the plain maxim of the common law," *caveat emptor*, are unsound and *not* sustained by the weight of authorities.—*2 Kent Com. (10th Ed.) 480 note ; 17 Wend. 267; 1 Denio, 378 ; 11 Ired. 166 ; 9 Watts, 55; 18 Wend. 428.*

And the exception to the general rule as to provisions, is confined to cases where the provisions are sold by *common dealers* for *immediate consumption* and *domestic use.*—*1 Denio, 378 ; 16 M. & W. 644; 10 Mass. 197 ; 3 E. D. Smith, N. Y. 324 ; 18 Wend. 428.*

It is not implied in *every sale* of provisions, that they are wholesome, any more than it is in sales of other articles where proof of a distinct affirmation is requisite. An *artifice* must be proved to entitle the sufferer to this remedy, equivalent to a remedy on an express warranty, as well in the case of provisions as in any other case. The difference is, that, in the case of provisions, the artifice is proved, when a *victualler* sells meat to his *customers* at a sound price, which at the time was stale or defective, or unwholesome from the state in which the animal died. For, in the nature of the bargain, the very offer to sell is a representation or affirmation of the soundness of the article, when nothing to the contrary is expressly stated; and his knowledge of the falsehood in this representation is also to be presumed from the nature and duties of his calling and trade.—*10 Mass. 197 ; 7 Hurl. & Nor. 586.*

But in this case the seller was not a victualler. He was no better qualified to judge of their wholesomeness than the buyer. There was nothing about his calling or experience upon which the public had a right to rely as a *warranty* of the soundness of his commodities. Where relations of trust and confidence exist, the law applies strict rules, and will regard that as fraudulent which, in other relations, would not be so regarded. It is upon an analogous principle that

a *common dealer* of provisions is held to impliedly warrant the soundness of his goods. To judge of the soundness of his goods is his business—his study. He is presumed to have superior facilities for judging of the quality of provisions, and the public places confidence in ' his capacity and experience. But it would not only be unreasonable, but unjust, to apply such a rule of accountability to one who sells a load of provisions in bulk in open market. Such a sale does not, and should not, constitute an exception to the common law rule of *caveat emptor*.

CAMPBELL J.

To a suit for the balance remaining unpaid on the price of the carcases of three hogs sold by Peters to defendants below to be used as food in their lumber camp, they set up, by way of recoupment, that one of the carcases was unsound and unfit for use. The purchase was made from the son of Peters, who was informed, at the time, of the purpose for which they were bought.

The Court refused to charge that, if such facts existed, Peters could not recover for the unsound article, and was liable on an implied warranty of soundness, but on the other hand instructed the jury that where a person, as in this case, sells goods in open market, there is no such implied warranty, and no liability for faults in the absence of deceit, fraud or special warranty.

It seems to be settled by many authorities that no implied warranty of soundness arises where such articles are purchased by a dealer to sell again.

Whether this rule arises from the fact that any injury from the use of the articles is likely to be remote and not readily traced out, or because, where his purpose in buying is merely speculative, one commodity is not to be distinguished from another in its incidents as merchandize, or what special reasons have led to it, cannot easily be deter-

mined.    It stands as a recognized doctrine, whatever may have been its reasons.

But where property is bought for a particular purpose, and only because of its supposed fitness for that, there are many cases in which a warranty is implied, unless the purchaser has seen fit to act upon his own responsibility and judgment.    And where articles of food are bought for consumption, and the vendor sells them for that express purpose, the consequences of unsoundness are so dangerous to health and life, and the failure of consideration is so complete, that we think the rule which has often been recognized, that such sales are warranted, is not only reasonable but essential to public safety.    There may be sellers who are not much skilled, and there may be purchasers able to judge for themselves, but in sales of provisions the seller is generally so much better able than the buyer to judge of quality and condition, that if a general rule is to be adopted, it is safer to hold the vendor to a strict accountability than to throw the risk on the purchaser.    The reason given by the New York authorities, in favor of health and personal safety, is much more satisfactory than the purely commercial considerations which take no account of these important interests.    While the question has not perhaps been very often decided, the principle has been generally accepted among the legal writers, and we feel no disposition to recede from it.    We have been pointed to no distinction between sales in one market or another, and can conceive of no special reason for regarding one sale for this purpose as differing in its incidents from any other.    The doctrine seems to be that any purchase for domestic consumption is protected.

We think, therefore, that for this reason the judgment should be reversed, and a new trial granted.    The other points seem to have been presented properly.

COOLEY Ch. J., and GRAVES J. concurred.

CHRISTIANCY J.

If, in addition to what appears in this case, it had further appeared that the plaintiff below, when he sold the property, knew it to be diseased, or had it appeared that he was the keeper of a meat market or butcher's shop and was engaged in the business of selling meat for food, and therefore bound or presumed to know whether it was fit for that purpose, I should have concurred in the opinion my brethren have expressed. But as the case does not show that plaintiff knew any thing more of the condition of the property than the purchasers, who seem to have had the same opportunity to judge for themselves, and plaintiff is not shown to have been engaged in a business which would authorize any presumption of knowledge, I do not think that in making this casual sale he was under any obligation of ascertaining at his peril the condition of the property in this respect.

In such a case the maxim of *caveat emptor* should, I think, apply. I therefore concur in the opinion of the Circuit Judge who tried the cause, as in my view founded on the better reason, and supported by the greater weight of authority.