| 73 | 541 |
| 84 | 461 |
| 73 | 541 |
| 106 | 526 |

JOSEPH H. COPAS v. THE ANGLO-AMERICAN PROVISION COMPANY.

*Attachment—Non-resident defendant—Jurisdiction—Fraud — Sale— Implied warranty—Pleading.*

1. Courts' will not permit jurisdiction of non-residents to be acquired by fraud, either in procuring personal or constructive service of its process.

So *held*, where goods were ordered, as alleged, of a foreign corporation, by a party who had dealt with it and claimed damages from it on account of its sale to him of damaged goods paid for before inspection, for the express purpose of

attaching the goods so ordered on their arrival, and thus acquiring jurisdiction of the corporation in a suit to recover said damages.

2. Where a wholesale dealer in hams shipped a quantity to a butcher, who was obliged to pay for the hams before inspection, both parties fully understanding that they were being sold and purchased for consumption as food, because of their supposed fitness for that purpose, a warranty will be implied that the hams were properly cured and fit for food.

3. An oral declaration in a justice's court on all matters provable under the common counts in *assumpsit*, and *especially* for loss and damage sustained by reason of damaged and unwholesome meats and provisions heretofore sold by the defendant to the plaintiff, amplified by a bill of particulars showing the amount and kinds of such meats, is sufficient to admit evidence in the circuit court in support of such special claim for damages.

Error to Shiawassee. (Newton, J.) Argued January 16, 1889. Decided February 1, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Lyon & Hackleman,* for appellant, contended:

1. If a person, with full knowledge of all of the facts, pays over money to another, he cannot recover it back. The case is not altered by the fact that the demand is unjustly made, or that the payor still insists that he ought not to pay, or gives notice that he will bring suit to recover the money back; citing *Mowatt v. Wright,* 1 Wend. 360; *Champlin v. Laytin,* 18 Id. 407, 423; *Benson v. Monroe,* 7 Cush. 125; *Goebel v. Linn,* 47 Mich. 489; *Wheeler v. Hatheway;* 58 Id. 85.

2. A payment is voluntary if made by a party informed of all the facts, and with no duress or coercion, even though it may be accompanied with a written or verbal protest; citing *Shane v. St. Paul,* 26 Minn. 543

3. The declaration contained no special count stating a cause of action upon which the evidence offered could be supported; citing *Mitchell v. Scott,* 41 Mich. 108; *Miller v. Scherder,* 2 N. Y. 267.

4 In a case like this there is no implied warranty as to the quality of the article sold; citing *Moses v. Mead,* 1 Denio, 378 (43 Am. Dec. 676); *Emerson v. Brigham,* 10 Mass. 196; *Winsor v. Lombard,* 18 Pick. 57; *Hoover v. Peters,* 18 Mich. 54.

5. The attachment, though a lawful act, was accomplished by unlawful means, and no lawful thing founded on a wrongful act can be supported; citing *Luttin v. Benin*, 11 Mod. 50; *Ilsley v. Nichols*, 12 Pick. 270.

6. The objection is not that the court has not jurisdiction of the person, for this the court had by the process, without the appearance and answer, but that it ought not, by reason of the alleged fraud, to take or hold jurisdiction of the action; citing *Levy v. Langridge*, 4 Mees & W. 338; *Iasigi v. Brown*, 17 How. 183; *Larned v. Griffin*, 12 Fed. Rep. 590; *Gilbert v. Vanderpool*, 15 Johns. 243; *Sullivan v. Frazee*, 4 Rob. (N. Y.) 620; *Wheelock v. Lee*, 74 N. Y. 498; *Higgins v. Beveridge*, 35 Minn. 285; *Townsend v. Smith*, 47 Wis. 623; *Chubbuck v. Cleveland*, 37 Minn. 466.

*S. F. Smith,* for plaintiff, contended:

1. In support of the claim of an. implied warranty, counsel cited *Hoover v. Peters*, 18 Mich. 51; *Gardiner v. Gray*, 4 Campb. 144; *Laing v. Fidgeon*, Id. 169, 6 Taunt. 108; 1 Pars. Con. (5th ed.) 560, 561; *Forcheimer v. Stewart*, 65 Iowa, 593; *Sinclair v. Hathaway*, 57 Mich. 60.

MORSE, J. This suit was commenced by attachment in justice's court, where the plaintiff recovered. On appeal to the circuit court for the county of Shiawassee, the plaintiff had verdict and judgment for $99.97.

The plaintiff's declaration was oral, counting specially for loss and damage sustained by reason of damaged and unwholesome meats and provisions sold to him by defendant, and generally on all the common counts in *assumpsit*. The items of his bill of particulars filed in the cause were as follows, to wit :

1886.

| | | |
|---|---|--:|
| Aug. 27. | Balance to date | $20 29 |
| Sept. 6. | Freight on (Fletcher) hams returned | 85 |
| " " | Allowance on (Fletcher) hams returned | 7 92 |
| July 21. | 933 lbs hams (spoiled), at 10 | 93 30 |
| " " | Freight on 933 pounds | 1 40 |
| 1887. | | |
| Aug. 13. | 65 lbs beef (spoiled), at 10½ | 6 83 |
| " 17. | Ex. on (Swartout) hams returned | 25 |
| " 20. | Hulbert & Co., rebate | 2 03 |
| " " | Freight and cartage on beef | 1 80 |
| " 22, | " on (Ganton & Co.) hams returned | 50 |

The defendant pleaded the general issue, and gave notice that it would prove that the plaintiff ordered the goods attached from defendant for the express purpose of getting jurisdiction of the defendant in Shiawassee county, by attaching its property there, and not for the purpose of purchasing them; which was a fraud and a trick upon defendant, and by which defendant claims the plaintiff got no jurisdiction in said justice's court.

The defendant company is a packer and wholesale dealer in provisions at Chicago, Ill.  The jurisdiction of the justice's court before the appearance and plea of the defendant was obtained as follows:  Writ of attachment was issued upon affidavit that plaintiff had good reason to believe that the defendant was a foreign corporation.  The writ was levied upon two tierces of dried hams (beef) ordered by plaintiff of defendant, but consigned by defendant to itself, at Owosso, Mich.  The writ was issued August 6, 1887, and the goods were attached the same day.  The hams were ordered August 2, 1887, and levied upon as soon as they reached Owosso.  The return-day of the writ was August 13, 1887.  No service being had on the defendant, and no one appearing in its behalf, the cause was continued until September 19, 1887.  An order was made to sell the hams as perishable.  They were sold for $78.87, and return of sale made August 23, 1887.  On September 19, 1887, Lyon & Hackleman, attorneys, appeared for defendant, and pleaded as before stated.  Upon the trial the defendant requested the court to instruct the jury to direct a verdict for the defendant, which was refused.

One of the main reasons urged in this Court why this request should have been granted is that the evidence is uncontradicted and conclusive that the goods attached were ordered for the express purpose of levying upon them, by which means the court would obtain jurisdiction of

the defendant, a foreign corporation. The court did not err in submitting the case to the jury, except as hereinafter stated. It is denied by the counsel for the plaintiff that this matter of jurisdiction was called to the attention of the court below by any special request to charge, or that in the argument of the request to direct a verdict the defendant's counsel referred to it. The record seems to bear out this claim of plaintiff. We find the court challenged by special request to every other reason alleged here why the verdict should have been directed in favor of the defendant, but there is an entire absence of any intimation or hint to the court in any of the requests, or outside of them, that any instruction was desired by the defendant in relation to the loss of .jurisdiction on account of any fraud in securing a levy on property within the county belonging to defendant.

It is true, the issue was made in the pleadings, and testimony was taken thereon on both sides, but the court in his charge did not refer to the matter at all; and from the instructions requested by defendant's counsel, and the record, we are inclined to the belief that the attention of the court was not challenged to this particular issue at the close of the trial, as it should have been in order to plant error upon the charge in this respect. And beside this, the evidence was not conclusive. The plaintiff testified that he did not order the goods for the express purpose of attaching them, and, although the facts and circumstances of the transaction seem to contradict him, he was nevertheless entitled to go to the jury upon the question of his good faith in the matter. We think the defense, if properly presented, would be a perfect one. We agree with the counsel for the defendant that jurisdiction cannot be obtained in this way. Courts will not permit jurisdiction of non-

residents to be acquired by fraud, either in procuring personal or constructive service of its process. *Chubbuck v. Cleveland,* 37 Minn. 466 (35 N. W. Rep. 362); *Van Horn v. Manufacturing Co.,* 37 Kan. 523 (15 Pac. Rep. 562); *Townsend v. Smith,* 47 Wis. 623 (3 N. W. Rep. 439); *Levy v. Langridge,* 4 Mees. & W. 338; Bigelow, Frauds, 90. And, while we think a plea in abatement would have been the better practice, we are not prepared to hold that it could not be set up, as in this case, in a notice of defense under the general issue. Here there has not been a failure of proper process. In such a case, the failure affects only the defendant, while here the fraud affects the integrity of the process of the court. *Townsend v. Smith,* 47 Wis. 623; *Larned v. Griffin,* 12 Fed. Rep. 590 ; *Wheelock v. Lee,* 74 N. Y. 498. If the counsel for the defendant had requested the court to instruct the jury that, if they found the goods attached were ordered by the plaintiff for the purpose of getting jurisdiction of the defendant, they must find a verdict for the defendant, the refusal to grant such request would have been error.

It was competent for the plaintiff to prove, in support of his claim, that he did not order the goods for the purpose of attaching them, and that, after the inception of his claim for damages for spoiled meat against the defendant, he had opportunity of attaching other goods, shipped to Owosso by defendant, and that the same were of more value than the hams which he did attach. It was a circumstance having some tendency, though slight, to maintain his assertion that he was innocent of any fraud in procuring the service of process.

Another vital point raised in the case is this: there was no express warranty of the meats sold; and it is contended by the counsel for defendant that under the law

there was none implied. It is claimed that this was not selling provisions "for domestic use," but a sale of them as merchandise, which the buyer, the plaintiff, did not intend to consume, but to sell again. It is contended that such sales as this are usually made—

"In large quantities, and with less opportunity to know the actual condition of the goods than when they are sold at retail. When provisions are not sold for immediate consumption, there is no more reason for implying a warranty of soundness than there is in relation to sales of other articles of merchandise."

In support of this contention the counsel for the defendant cite the following authorities: *Emerson v. Brigham*, 10 Mass. 196; *Winsor v. Lombard*, 18 Pick. 57; *Hoover v. Peters*, 18 Mich. 54.

But the present is not such a case. The evidence is undisputed that the defendant was engaged in pork-packing at Chicago, Ill., as well as a wholesale dealer in hams and other cured meats. The defendant was in fact a manufacturer of hams, cured by a process unknown to plaintiff, called "sweet pickled hams." These are the hams claimed to be spoiled and unfit for consumption. The plaintiff was a butcher, kept a meat market, and sold both at wholesale and retail. Most of the goods were shipped to Owosso in the name of the defendant, and the plaintiff was required to pay for them before delivery, without an opportunity of inspection. The defendant had every opportunity to know before shipment what the condition of these hams was. Indeed, the evidence in its behalf is to the effect that they were examined and in good condition when shipped. The plaintiff had to take them, and pay for them, without inspection, relying alone upon the supposition, which he had a right to entertain, that the goods would be of the quality that he ordered, and suitable for the purposes he designed,—

the sale or use of them for food. In such a case there must be an implied warranty that the goods were fit for food. See opinion of CHRISTIANCY, J., *Hoover v. Peters,* 18 Mich. 56.

It must be held, we think, that in this case both parties fully understood that these hams were being sold for consumption as food, and bought for that purpose, because of their supposed fitness for food, and that the seller had better opportunity to judge of that fitness than the buyer, who had none at all. Therefore there was an implied warranty that the hams should be properly cured and fit for food. *Hoover v. Peters,* 18 Mich 51; *Sinclair v. Hathaway,* 57 Id. 60, 62 (23 N. W. Rep. 459).

The court correctly stated the law in this respect as follows:

"The sale of hams or bacon, which is the curing of pork in a particular manner, involves * * * the same principles of law which are applicable to manufactured articles, involving knowledge, skill, and fitness on the part of the manufacturer, who is also the seller, where he manufactures and sells his own goods; and a purchaser who makes a contract or gives an order for articles manufactured by the vender is entitled, when he relies upon the vender's and not his own judgment, and has no opportunity of inspection or examination, to receive an article of the kind ordered, of quantity and quality; * * * and if he has paid for them before delivery to him, and before he has had an opportunity to inspect and examine them to determine their quality, and he afterwards discovers that they are not of the quality or kind ordered, or merchantable, he may recover back the amount paid, if they are wholly worthless; and, if not wholly worthless, he can recover the difference between their actual value and the price paid. * * * *

"I will therefore instruct you in this case that if you find from the evidence that when the plaintiff ordered the hams the defendant was a manufacturer of the same; that they were of his finish; that he also knew the purpose or particular use for which the plaintiff bought them, and that the vendee would not buy an inferior or non-

merchantable article of that kind; and if you find the hams furnished were not bought upon the judgment of the vendee, the plaintiff, but in reliance upon the judgment of the vender to furnish a merchantable article; and if you find it to be true that the hams so delivered were at the time they were delivered unmerchantable, and that the plaintiff paid for them, and that he had no reasonable opportunity to inspect or discover the defects before paying for them,—he would be entitled to recover the difference in value between the price paid and the market value of the article at the time they were received, if you find that the hams had any value. If they were not according to the contract, the plaintiff should have returned them within a reasonable time, or notified the defendant of the defects, and abided its order in relation to their disposition. If they were entirely worthless, and of no value, it would not be necessary to return them; but the burden of proof in such case would be on the plaintiff to establish by a preponderance of evidence that they were of no value. If you find that they were not entirely worthless, but of some value, then you would have to deduct from the plaintiff's claim, if you find for him, the value of such defective hams."

It is also objected to the recovery of the plaintiff that the declaration contained no special count upon which the evidence offered could be supported. The testimony, it is claimed, tended to show none other than special damages, which could not be recovered under the common counts in *assumpsit*.

Great liberality has always been allowed in the interpretation of pleadings in a justice's court, when such pleadings are oral, and we must get our knowledge of them from the docket entry made by the justice. In such cases, if we are satisfied from the whole case that the objecting party was fully apprised of the claim made by such pleadings, and went to a trial on the merits under them, we shall not require any great strictness or technicality in the statement of the cause of action or grounds of defense. In the case at bar we stated in the opening that the plaintiff counted—.

" Specially for loss and damage sustained by reason of damaged and unwholesome meats and provisions sold to him by defendant."

This was our interpretation of the justice's record, which reads as follows:

" The plaintiff declares orally on all matters provable under common counts in *assumpsit*, and *especially* for loss and damage sustained by reason of damaged and unwholesome meats and provisions heretofore sold by defendant to plaintiff."

This allegation, with the explanation given by the bill of particulars, was sufficient to admit the evidence adduced on the trial in favor of plaintiff's claim for damages.

The defendant's counsel requested the court to instruct the jury that the plaintiff under the evidence and declaration could not recover either of the three items:

| | | |
|---|---|---|
| Aug. 27, 1886. | Balance to date | $20 29 |
| Sept. 6, 1886. | Allowance on Fletcher's hams, returned | 7 92 |
| July 21, 1886. | 933 lbs. hams spoiled, at 10 | 93 30 |

In relation to the first item, it appears that June 25, 1886, the plaintiff bought a lot of pork hams, amounting to $518.10. He returned some of the hams as spoiled, and asked defendant to allow him $28.75 for the same, being 10 cents per pound, the cost price. Defendant refused to credit him with that amount, but deducted $8.46, what the hams were worth in Chicago for grease. This left a balance of $20.29 claimed by plaintiff. This bill of $518.10 was shipped to his order. Afterwards, when this dispute arose about the hams, defendant shipped to its own order, as before stated. Plaintiff paid defendant, August 27, 1886, the amount claimed by defendant; protesting that there was a balance of $20.29 due him.

It is claimed that this was a voluntary payment, with full knowledge of all the facts, and cannot be recovered back. The court was requested to instruct the jury that

if the plaintiff voluntarily paid the claim, only protesting against its justness, he could not recover it back in the suit under the declaration. It was error not to give this instruction.

The Fletcher item of $7.92 should not have been allowed under the testimony. The plaintiff could not swear how many hams Fletcher returned, or what the value of them was. He allowed $7.92 on settlement with him, and charged defendant with that amount. This he could not do without some showing as to the amount and value of the damaged hams. He could not bind defendant by his settlement with Fletcher.

The third item, of $93.30, was properly submitted to the jury. The hams upon which this damage was claimed were received without opportunity of inspection, and plaintiff gave testimony to the effect that this amount in value was totally spoiled by reason of defective curing. If this was a fact, he was entitled to recover.

For the errors above noted the judgment must be reversed, and a new trial granted, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.