BAKER *v.* KAMANTOWSKY.

1. SALES—EVIDENCE—INSPECTION—OFFICIAL ACTS.

In an action for the conversion of a quantity of pork which defendant claimed had soured or spoiled and consequently deteriorated in value, evidence that the municipal inspector had inspected it three days after the delivery and condemned a portion was inadmissible, though the court properly allowed testimony to be received that it smelled bad and was in poor condition.

2. TRIAL—APPEAL AND ERROR—JURY—ARGUMENT.

Counsel's statement, in the course of arguing the cause to the jury, in an action for the conversion of certain meat, that in the sale of an article of food, a warranty was implied by the law that the article was fit for the purpose for which it was sold, was inapplicable, and where the court so advised the jury, the appellant was not prejudiced by the ruling, on the ground that he should have been permitted to state his theory to the jury, the rule of law having no proper application to the issues unless it related to defendant's contention that he had purchased the pork of a wholesale dealer in meat, in which event the rule of *caveat emptor* would apply as the testimony was undisputed that he was not a consumer but a retail dealer, and had an opportunity to inspect.

3. SAME—CAVEAT EMPTOR—SALES—WARRANTY.

Upon the sale of food by one dealer to another with full opportunity to make an inspection, the law does not imply a warranty of fitness or quality.

Error to Kent; Connine, J., presiding. Submitted January 26, 1915. (Docket No. 63.) Decided December 21, 1915.

Trover by Volney Baker against Joseph Kamantowski for conversion of a quantity of pork. Judgment for plaintiff. Defendant brings error. Affirmed.

*Don E. Minor,* for appellant.

*Rodgers & Rodgers,* for appellee.

BIRD, J.   Plaintiff, a farmer, contracted in the fall
of 1913 to sell his dressed pork for 10 cents per pound
to one Katz, a retail meat dealer in the city of Grand
Rapids. A few days after Thanksgiving he killed
the hogs, and on the following day delivered them to
Katz; but he refused to accept them by reason of the
fact that some of them had begun to sour. Plaintiff
thereupon placed the pork in the refrigerator of Swift
& Co., who were wholesale meat dealers. The under-
standing under which they were left there is in dis-
pute. Plaintiff returned in a few days thereafter, and
found that the hogs had been sold to the defendant,
a retail meat dealer, by Swift & Co. He went to de-
fendant's market and demanded payment, and after-
wards demanded the pork. Both demands were re-
fused, and he brought this suit in trover to recover
their value. The defendant took the position that he
purchased the pork of Swift & Co. for 9½ cents per
pound; that upon delivery he discovered that some of
the hogs had commenced to sour, and he called Swift
& Co.'s attention to it, whereupon the consideration
was reduced to 5 cents per pound. This amount de-
fendant was willing to pay. Plaintiff insisted that the
hogs were sold without his knowledge, and that he had
never authorized Swift & Co. as his agent to sell the
pork; that he had simply placed it in their refrigerator
in an attempt to overcome the sourness. The trial
court left it to the jury to determine which of these
two conflicting claims was the true one. They found
for the plaintiff on the basis of 9½ cents a pound for
the pork.

1. The defendant called the meat inspector, the
driver of the garbage wagon, and the city inspector
of the city of Grand Rapids, and attempted to show

by them that the meat was inspected three days after
it was delivered to defendant, and that some of it was
condemned and destroyed. The trial court refused to
receive this testimony, and defendant argues that its
rejection was error. The important thing to be shown
was its condition, as bearing upon its value. The trial
court permitted these officials to testify as to the con-
dition of the meat, and how it smelled. What official
action was taken by them under the ordinance based
upon this inspection was not important in this case
under the issues as made.

2. While defendant's counsel was addressing the
jury, the following colloquy took place:

*"Mr. Rodgers:* I desire to object to the statement of
counsel for the defendant, as just made to the jury,
that there is an implied warranty of the pork in ques-
tion.

*"Mr. Minor:* I have just stated to the jury what I
understand the rule of law to be.

*"The Court:* I heard the statement.

*"Mr. Minor:* I want to get it on the record, your
honor; if he wants his objection on there, I want it
full.

*"The Court:* All right.

*"Mr. Minor:* That in the sale of an article of food,
known to be used or going to be used for that purpose,
there is an implied warranty that the article is fit for
the purpose for which it was sold or intended to be
used.

*"Mr. Rodgers:* I desire to object to that statement,
and ask the court to tell the jury not to consider it.

*"The Court:* Well, speaking generally, that is the
law; but I do not think that doctrine applies to the
facts in this case.

*"Mr. Minor:* I take an exception.

*"The Court:* And it is an error to argue it to the
jury."

Counsel assigns error because he was not permitted
to "state to the jury what he understood the law to
be as applied to the facts." The record shows that

counsel did state his theory of the law to the jury, but the court said to them that the rule stated did not apply to the facts in the case. It is quite evident that the court would not have made the ruling at that time, had not counsel invited him to do so by restating his theory and indicating a desire to make a record of it. Counsel also takes issue with the trial court as to the applicability of the law to the facts. It appears to us that the court was right in stating that such rule of law did not apply to the facts. The only application that principle could have would be under defendant's theory; that theory was that Swift & Co., a wholesale dealer in meats, had sold the hogs to a retail meat dealer. This would be a sale by one dealer to another, and not a sale to a consumer. Under such circumstances the rule of *caveat emptor* applies, if the purchaser had an opportunity to inspect the meat, which he did in this case. *Hoover* v. *Peters*, 18 Mich. 51; *Copas* v. *Provision Co.*, 73 Mich. 541 (41 N. W. 690). See, also, Uniform Sales Law, § 15 (Act No. 100, Pub. Acts 1913).

We feel that a further consideration of the numerous assignments is unnecessary. We have given them careful attention, and they appear to be without merit. An examination of the record and briefs impresses us that the large number of assignments is principally due to the failure of defendant to recognize that plaintiff had his theory of the case, and had a right to have it submitted to the jury on his theory. It was conceded that the hogs belonged to the plaintiff, and it was likewise conceded that the defendant had the hogs and had not paid for them. If plaintiff's claim were true, that Swift & Co. had no authority to sell the hogs to defendant, he was entitled to recover from defendant the value of the hogs at the time when they came into his possession; and this would be true, even though Swift & Co. assumed to have the authority to sell the

hogs and did sell them to the defendant. On the other hand, if plaintiff authorized Swift & Co. to dispose of the pork, and in pursuance of this authority it afterwards sold it to the defendant, the plaintiff would be bound by such sale. The trial court, in a very excellent charge, submitted these two conflicting theories to the jury, and they have found for the plaintiff, and their determination must be conclusive of the questions of fact.

The judgment is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.