ZIELINSKI *v.* POTTER.

1. FOOD—SALES—WARRANTY—IMPLIED WARRANTY—DEALERS— CAVEAT EMPTOR.

In an action for the value of a beef "critter," bought by plaintiff, a wholesale and retail meat dealer, which proved to be diseased and unfit for food, there was no implied warranty of fitness, and, in the absence of express warranty or fraud, plaintiff could not recover; the doctrine of *caveat emptor* being applicable.[1]

2. SAME—PRIVATE INDIVIDUAL—IMPLIED WARRANTY.

Where a private individual buys food for his own use and

[1]The question of implied warranty on sale of food is discussed in notes in 22 L. R. A. 195; 15 L. R. A. (N. S.) 884.

consumption from a vendor who is a dealer in the business of handling such articles, there is an implied warranty as to fitness for the purpose for which it is sold.

Error to Bay; Collins, J.    Submitted January 3, 1917.    (Docket No. 25.)    Decided March 29, 1917.

Assumpsit in justice's court by William J. Zielinski against James Potter for the price of a cow.    From a judgment for plaintiff, defendant appealed to the circuit court.    Judgment for defendant.    Plaintiff brings error.    Affirmed.

*Joslyn & Houghton,* for appellant.
*Charles W. Hitchcock,* for appellee.

The plaintiff is a wholesale and retail meat dealer in the city of Bay City, and the defendant is a farmer and milk dealer living on the outskirts of that city. In the year 1914 the defendant entered into negotiations with one Mike Golombeck, who was in the employ of the plaintiff, for the exchange of a cow and calf belonging to the plaintiff for a beef "critter" belonging to the defendant.    Golombeck took the cow and calf to the defendant's farm, and an exchange was effected whereby the defendant took the cow and calf and gave Golombeck the beef "critter" and $7 in cash. The "critter" was thoroughly examined by Golombeck, who was an experienced buyer and butcher, and both parties were satisfied.    Two days later the plaintiff sent the "critter" to a slaughterhouse to be butchered, and there the meat inspector examined it and rejected it as unfit for food and ordered the carcass destroyed. Certain specimens were removed from the carcass and sent to Ann Arbor, where they were examined under the microscope and reported to be diseased with malignant lympho-sarcoma and to be unfit for food.

It appeared that the "critter" had been a milch cow, but had been dry for about two months, and the

defendant had fatted it for the purpose of selling it for beef. It further appeared that the cow had never been sick, had always eaten heartily, and had no external marks that indicated it was diseased.

The plaintiff brought suit in the justice's court to recover for the cow and calf sold by plaintiff to the defendant. Judgment was rendered for the plaintiff, and appeal was taken to the circuit court. On the trial there a verdict of no cause of action was rendered by the jury, and judgment entered thereon. The following special question was submitted to the jury and answered by them in the affirmative:

"Was the meat in the cow in question fit for food and suitable for family consumption when the cow was butchered Monday morning?"

In this court the following contentions are made by counsel for appellant in his brief:

"(1) That the cow so diseased was of no value, and consequently no consideration passed to plaintiff for the cow and calf he sold to defendant.

"(2) That the cow was sold by the producer and purchased by the plaintiff for family consumption, and consequently impliedly warranted fit for that purpose.

"(3) That the findings of the meat inspector and board of health in this case, when made in good faith, are conclusive."

KUHN, C. J. (*after stating the facts*). The learned trial judge submitted the case to the jury upon the theory that one who sells articles of food impliedly warrants such articles to be fit for the purpose for which they are sold, and, if it develops that such articles are not fit for food, the loss falls on the seller, and not on the purchaser.

An examination of the authorities shows that this doctrine of implied warranty does not apply to a situation such as is presented by this record. Where a purchaser by reason of his knowledge and occupation is in as good a position to judge as to the fitness of the

article for food as the vendor is, the doctrine of *caveat emptor* applies. While it is true that, where a private individual buys for his own use and consumption from a vendor who is a dealer in the business of handling such articles, there is an implied warranty as to fitness for the purpose for which they are sold, nevertheless, where there are two dealers negotiating between themselves, each having an equal chance to inspect the article and each with equal knowledge, it does not apply

In this case it is shown that the purchaser was experienced in the business of buying cattle, and there is no claim that there was any express warranty, and no question of fraud is raised. In the recent case of *Baker* v. *Kamantowsky,* 188 Mich. 569 (155 N. W. 430), we had occasion to consider this question, and we there said:

"This would be a sale by one dealer to another, and not a sale to a consumer. Under such circumstances the rule of *caveat emptor* applies, if the purchaser had an opportunity to inspect the meat, which he did in this case. *Hoover* v. *Peters,* 18 Mich. 51; *Copas* v. *Provision Co.,* 73 Mich. 541 (41 N. W. 690); Uniform Sales Law, § 15 (Act No. 100, Pub. Acts 1913)."

See, also, *Hanson* v. *Hartse,* 70 Minn. 282 (73 N. W. 163, 68 Am. St. Rep. 527); *Howard* v. *Emerson,* 110 Mass. 320 (14 Am. Rep. 608); *Cotton* v. *Reed,* 25 Misc. Rep. 380 (54 N. Y. Supp. 143); *Warren* v. *Buck,* 71 Vt. 44 (42 Atl. 979, 76 Am. St. Rep. 754).

We are of the opinion that the court should have directed a verdict for the defendant. As this conclusion results in sustaining the judgment entered in the court below, it is unnecessary to consider the other questions raised by appellant in his brief.

The judgment is affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE and FELLOWS, JJ., concurred.