AMOS *v.* WALTER N. KELLEY CO.

1. SALES—FOREIGN CONTRACT—RULE OF LAW APPLICABLE.

In an action on an Indiana contract for the sale of lumber, where it is conceded that the uniform sales act had not been adopted in that State, the common law rule of that State is controlling.

2. SAME—CONTRACT BETWEEN DEALERS—INSPECTION—IMPLIED WARRANTY.

Under the common law of that State, the rule invoked by defendant that there was an implied warranty that the lumber was fit to be used in the manufacture of automobiles, is not applicable to this case, where the contract is between dealers and provides for inspection of the lumber.

3. SAME — NO IMPLIED WARRANTY OF FITNESS WHERE ARTICLE DESCRIBED.

Even if the purpose for which the lumber was purchased was disclosed to the seller, there is no implied warranty that it was fit for said purpose, since the contract described the kind and quality of the lumber purchased, which was

¹Sales, 35 Cyc. p. 93; ²Id., 35 Cyc. pp. 409, 411; ³Id., 35 Cyc. p. 401; 35 L. R. A. (N. S.) 277; 24 R. C. L. 173.

240—Mich.—17.

well known to the trade, a specified article, and the doctrine
of *caveat emptor* applies.

4. SAME—BUYER BOUND BY INSPECTION AGREED UPON IN ABSENCE
OF FRAUD OR MISTAKE.
    Where a dealer purchased lumber of a recognized grade
    subject to inspection under the rules of the National Hard-
    wood Lumber Association, he is bound by said inspection,
    in the absence of a showing of fraud or mistake.

5. SAME—REINSPECTION—CLAIM NOT SUPPORTED BY RECORD.
    Defendant's claim that it was deprived of the right to a
    reinspection by the chief inspector of said association by
    its rules is disposed of by the record, which shows that
    reinspection was allowed by agreement, irrespective of
    the strict rules, and that plaintiff persistently requested
    defendant to agree to a reinspection and defendant re-
    fused.

6. SAME—BREACH OF CONTRACT—SEVERABILITY OF CONTRACT.
    Where the contract, which is to be treated as a whole and
    not an installment one, called for percentages of firsts and
    seconds, the fact that in the first shipment said percent-
    ages were not maintained may not be treated as a breach,
    in view of the undisputed testimony that the sellers were
    ready, able, and willing to make full shipments of the
    amounts and percentages agreed upon.

7. SAME—DAMAGES—MARKET VALUE—QUESTION FOR JURY.
    Whether there was a market for the lumber at the time
    of defendant's breach of the contract, which was in dispute,
    *held*, properly submitted to the jury for their consideration
    on the question of damages.

Error to Wayne; Hart (Ray), J., presiding.   Sub-
mitted April 27, 1927.   (Docket No. 130.)   Decided
October 3, 1927.

Assumpsit by Ora A. Amos and Roy Amos, co-
partners as the Amos Lumber Company, against the
Walter N. Kelley Company on a contract for the sale
of lumber.   Judgment for plaintiffs.   Defendant
brings error.   Affirmed.

⁴Sales, 35 Cyc. pp. 226 (Anno), 410, 411; ⁵Id., 35 Cyc. p. 591;
⁶Id., 35 Cyc. p. 216; ⁷Id., 35 Cyc. p. 600.

*Robert M. Brownson* and *Gerald M. Meehan,* for appellant.

*Douglas, Barbour, Brown & Rogers,* for appellees.

FELLOWS, J.    At a named price defendant, a dealer in lumber, made an offer to purchase of plaintiffs 50,000 feet of hard maple No. 1, common or better, to grade 50 to 60 per cent. FAS (1st and 2d), to be dry unless otherwise specified, which was otherwise specified in the contract by the provision "stock to be put in pile before November 1, 1920, and shipped out from time to time when 60 days dry," the undisputed testimony showing that lumber in pile or "on the sticks," an expression used by the trade, for that period is green lumber.    The offer provided that inspection was to be made by an inspector of the National Hardwood Lumber Association, and each party to pay one-half of the cost of such inspection.    Defendant by a separate writing also offered to purchase 100,000 feet of beech, to grade 20 to 30 per cent. FAS.    The offer was similar in language to the offer to purchase the maple.    Plaintiffs, located at Edinburg, Indiana, there accepted both offers.    Some time after the making of the contracts by these offers and acceptances, defendant requested the plaintiffs to ship some of the lumber after having it kiln-dried, offering to pay the expense of the kiln-drying.    An inspector of the association was called, the lumber inspected by him, kiln-dried, and shipped.    The demand for lumber of the kind and  grade here involved slackened about this time, and no further lumber was ordered or shipped, and many pages of correspondence are found in the record in which each party asserted what it claimed was its rights, and in which fruitless attempts were made to adjust the differences of the parties.

Upon the trial defendant insisted as its main defense to plaintiffs' claim and on its claim of recoupment that,

before the making of the contract, it informed plaintiffs that it had resold the lumber to be used in the manufacture of automobiles, and the defense to plaintiffs' claim and its claim of the right to recoup damages are based on its claim that there was an implied warranty that the lumber was suitable for use in the manufacture of automobiles.

It seems to be conceded by defendant's counsel that, the offer having been accepted in Indiana, the contract is an Indiana contract. *Dudley A. Tyng & Co.* v. *Converse,* 180 Mich. 195. It is likewise conceded that, at the time the contract was made, the uniform sales act had not been adopted in that State. The rights here asserted by defendant are not rights having to do with the remedy, but are claimed to be a part of the contract by implication. Under such circumstances the law of Indiana controls, and we should assume that the common law of Indiana is the same as here. We therefore do not find it necessary to construe the uniform sales act, which was not in force in Indiana, or to determine whether, in the particulars here involved, it but follows the common law.

That the Indiana court of last resort and this court are in substantial harmony is, we think, demonstrated by the only case from that court cited to us by counsel: *Oil-Well Supply Co.* v. *Watson,* 168 Ind. 603 (80 N. E. 157, 15 L. R. A. [N. S.] 868). In that case the Indiana court held (quoting paragraph 3 of the syllabus) :

"Where the vendor sells and the vendee buys a specific chattel for a known purpose, for a full consideration, and inspection is either impracticable or no opportunity is afforded, there is an implied warranty that the chattel is fit for the purpose; and this is true regardless of whether the vendor was the manufacturer or a mere dealer, or whether the contract of sale was executory or executed."

But it also held (quoting paragraph 2 of the syllabus) :

"Where the vendor, who is neither the manufacturer nor producer, sells the goods for all purposes to which they are adapted, and the goods are in existence and capable of inspection, the maxim *caveat emptor* applies, in the absence of fraud, even though defects, not discoverable on examination, exist in the goods."

In opposition to the claim which defendant asserts, it is insisted on behalf of plaintiffs that while the doctrine of implied warranty of fitness has its place in the common law, it is not applicable where the transaction, as here, is between dealers, and there is agreement and opportunity for inspection.

We are persuaded that plaintiffs invoke the correct rule applicable to the case in hand.     As noted, it is the rule adopted by the court of last resort of Indiana, and it is in consonance with the common-law rule uniformly applied by this court.     In *Talbot Paving Co.* v. *Gorman,* 103 Mich. 403 (27 L. R. A. 96), Mr. Justice HOOKER, speaking for the court, said:

"He had simply undertaken to deliver certain stone of given dimensions.     If he should deliver such he would be entitled to pay.     If he did not, it could hardly be claimed that he could require acceptance on the ground that the stone were suitable, or better adapted to the purpose of the plaintiff than as though made according to direction.     Clearly, if plaintiff had furnished specifications, and had a right to insist on the stone being in conformity thereto, regardless of defendant's judgment, it could not sustain the proposition that the law should imply a warranty to make them conform to some other test; and manifestly it cannot be said that knowledge of the use intended should require defendant to vary from his contract as to dimensions.     The conclusion appears to us irresistible that no such warranty as this can be implied."

In the more recent case of *Zielinski* v. *Potter,* 195 Mich. 90 (L. R. A. 1917D, 822), this court had before

it a case involving the sale of food products. The courts have uniformly protected the consumer of such products by applying the doctrine of implied warranty of fitness. But the case before us was between dealers, and there was opportunity for inspection. Chief Justice KUHN, speaking for the court, said:

"An examination of the authorities shows that this doctrine of implied warranty does not apply to a situation such as is presented by this record. Where a purchaser by reason of his knowledge and occupation is in as good a position to judge as to fitness of the article for food as the vendor is, the doctrine of *caveat emptor* applies. While it is true that, where a private individual buys for his own use and consumption from a vendor who is a dealer in the business of handling such articles, there is an implied warranty as to fitness for the purpose for which they are sold, nevertheless, where there are two dealers negotiating between themselves, each having an equal chance to inspect the articles and each with equal knowledge, it does not apply."

See, also, *Baker* v. *Kamantowsky,* 188 Mich. 569; *E. P. Stacy & Sons* v. *Moher,* 200 Mich. 81.

We are persuaded that for another reason the defense of implied warranty is not available here. Defendant selected a recognized and established grade of lumber, well known to the trade, a specified article. Defendant's counsel relies on section 1344, 2 Mechem on Sales, and the note thereunder. In this section Mr. Mechem states the rule as follows:

"The rule here, therefore, is that, where the buyer, disclosing the purpose to be accomplished, orders an article to supply that purpose from a manufacturer or dealer in such articles, trusting to the latter's skill, judgment or experience to determine what the article shall be, the seller, by accepting the order, impliedly agrees that the article which he supplies shall in fact be reasonably fit and appropriate to the purpose so disclosed."

But in section 1349 he also says:

"The implied warranty of fitness is not to be extended to cases which lack the necessary conditions upon which it depends.    The essence of the rule is, that the contract is executory; that the particular article is not designated by the buyer; that only his need is known; that he does not undertake or is not able to determine what will best supply his need, and, therefore, necessarily leaves the seller to make the determination and take the risk; and if these elements are wanting, the rule does not apply.

"If, therefore, a known, described and defined article is agreed upon, and that known, described or defined article is furnished, there is no implied warranty of fitness even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased."

Mr. Mechem undoubtedly states the correct common-law rule in both sections.    Language used by him in the latter section has been adopted in 35 Cyc. p. 400, and has been followed by this court.    *McCray Refrigerator, etc., Co.* v. *Woods & Zent,* 99 Mich. 269 (41 Am. St. Rep. 599) ; *Phœnix Sprinkler & Heating Co.* v. *Owen-Ames-Kimball Co.,* 217 Mich. 156.    The doctrine has likewise been approved in other States. *Mason* v. *Chappell,* 15 Grat. (Va.) 572; *Gunther* v. *Atwell,* 19 Md. 157, 171; *Peoria Grape Sugar Co.* v. *Turney,* 175 Ill. 631 (51 N. E. 587) ; *Port Carbon Iron Co.* v. *Groves,* 68 Pa. 149.    In the Illinois case it was held (quoting from the syllabus) :

"A contract calling for the delivery of a certain kind of coal designated by its trade name carries no implied warranty of its fitness for any purpose, or of its quality, other than that it be the kind specified."

In the Pennsylvania case the rule was thus tersely stated:

"This is a correct statement of the law:    If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is

an implied warranty that it is fit for that purpose. This principle has been carried very far. It must, however, be limited to cases where a thing is ordered for a special purpose, and not applied to those where a special thing is ordered, although this be intended for a special purpose."

For the two reasons stated, we conclude there was no implied warranty. This disposes of the principle defense to plaintiffs' claim and defendant's claim of recoupment.

In the instant case inspection by an inspector of the National Hardwood Association was agreed upon. In *Walter N. Kelley Co.* v. *Andrews,* 225 Mich. 403, it was said by Mr. Justice SHARPE, speaking for the court:

"The purpose of agreeing on an inspector is to prevent disputes arising after shipment. In the absence of fraud or mistake, the result of the inspection made by a man agreed upon is conclusive between the parties."

There is no testimony tending to show fraud or mistake of the inspector, and the inspection was binding on the parties. Defendant, however, insists that the rules of the association, which were introduced in evidence, deprived it of the right to a reinspection by the chief inspector of the association, because the shipment was not kept intact, and the lumber was green. Defendant, a dealer in hardwood lumber, entered into an agreement to be bound by the inspection. It claims no want of knowledge of the rules. It did not order a shipment direct to it, but requested that the lumber be kiln-dried before shipping to it. The practice of the association is to inspect before kiln-drying. As we have pointed out, the contract called for green lumber; the kiln-drying was at defendant's request and for its benefit. But a complete answer to this contention is found in the voluminous correspondence appearing in this record. Plaintiffs

persistently requested defendant to agree to a re-inspection by the chief inspector and defendant as persistently refused.   The undisputed testimony discloses that the chief inspector of the association re-inspected upon agreement by the parties irrespective of the strict rules of the association.

The contract was not an installment contract.   The fact that the percentage of firsts and seconds was not maintained in the particular shipment did not breach the contract where the undisputed testimony shows, as it did here, that the plaintiffs were ready, able, and willing to make full shipments of the amount and the percentages agreed upon.   The contract must be treated as an entirety.

Defendant also complains of the damages recovered.   The plaintiffs' testimony tends to show that, at the date of the breach of the contract, there was no market or practically no market for the lumber; that by holding it awhile they received much more for the lumber than they could have received at the date of the breach.   Defendant, on the other hand, gave testimony tending to show that there was a market and what it was.   These conflicting claims were submitted to the jury in a charge correctly instructing the jury as to the measure of damages. The jury rendered a verdict for less than plaintiffs' claim.   The verdict was supported by the testimony and was not against its clear weight.

The judgment will be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.