## OUZTS, d. b. a. SPARTAN FOOD COMPANY, Plaintiff-Appellant, v. MALONEY, d. b. a. WORLD PRODUCTS COMPANY, Defendant-Appellee.

Ohio Appeals, Second District, Franklin County.

No. 4568.   Decided September 25, 1951.

Frederick L. Orum, Columbus, for plaintiff-appellant.
Isaac & Postlewaite, Columbus, for defendant-appellee.

## OPINION

By MILLER, J.

This is a law appeal from the judgment of the Common Pleas Court rendered upon the verdict of a jury finding for the defendant on the plaintiff's petition and also finding for the defendant on its cross-petition. The action was one for damages, breach of warranty in the sale of a product known as "So-EZY Pudding and Pie Mix," to which the defendant filed a cross-petition for the balance due upon the account for the purchase price of the same.

The record reveals that prior to June, 1945, the plaintiff-appellant was engaged in jobbing and distributing various products, particularly hosiery, throughout the southern and mid-Atlantic states and doing business under the name of

"Spartan Hosiery Company"; that the defendant-appellee was engaged in jobbing and distributing novelties, food products, etc., throughout the eastern part of the United States, carrying on its business under the name of "World Products Company Branch." The first transaction between these parties took place in the early part of 1945 when defendant-appellee began purchasing hosiery from the plaintiff-appellant for resale. Apparently each party was looking for a new product to sell or for outlets of the products each had for sale and each sent price lists to the other. In June, 1945, the defendant-appellee recommended to the plaintiff-appellant "So-EZY Pudding and Pie Mix" as an item with good sales possibilities. Pursuant to plaintiff-appellant's request a dozen packages of the product were sent to him for approval. Upon tests being made of the product the same was found to be satisfactory, and feeling that the product was a good one the plaintiff-appellant undertook to sell it to retailers and wholesalers throughout a certain territory. In the course of the next eighteen months the plaintiff-appellant purchased between $65,000.00 and $100,000.00 worth of the product. In nearly all cases shipments were made directly to customers to whom the plaintiff-appellant had made sales.

The record reveals further that this product was manufactured by a Mr. Mark Russell of Columbus, Ohio, who was operating under several trade names and selling all of this product through the defendant-appellee. Mr. Russell also manufactured the same product and sold it under the name of "Zip" to other wholesalers. Mr. Russell was the sole author of the formula used in the manufacture of "So-EZY Pudding and Pie Mix," the sole designer of the box in which it was packaged and sold and the person solely responsible for selecting the name "So-EZY."

In late 1945 the plaintiff-appellant suggested that the manufacturer put out a smaller package which would be a two-pie package instead of six. This was done, the package carrying the same label, although the manufacturer suggested that the name "Zip" be used, which name did not meet with the appellant's approval. On December 9, 1946, a shipment of "So-EZY Pudding and Pie Mix" was seized by the United States Food and Drug Administration for a violation of Title 21, United States Code, regarding misbranding of foods in interstate commerce and thereafter the Federal Court ordered the destruction of the seized merchandise. After this seizure Mr. Russell offered to pay the freight both ways on such of the product as plaintiff-appellant might have on hand and to repackage it so as to meet the objections of the Food and Drug

Administration. This offer was refused. The same offer was refused about six months later after the claim was made that the term "So-EZY" was a registered trade-mark owned by another firm and that its use was a violation of the owner's rights.

The record also reveals that as of the time prior to the seizure the plaintiff-appellant had in his warehouse merchandise to the value of $2989.52, and after the notice of the alleged trade-mark violation this merchandise had no value at all.

At the close of all the evidence the defendant-appellee moved to dismiss the plaintiff's petition and direct a verdict for the defendant-appellee. The court refused to dismiss the petition, but did sustain the motion for a direction and directed the jury to return a verdict in favor of the defendant-appellee.

It is contended by the plaintiff-appellant that the court erred in its instruction to the jury when it said,

"The law is that a person who sells products such as this whether he be the seller or grower or manufacturer or whatnot, the law provides that there is an implied warranty that the goods shall be of merchantable quality and I have taken the position that this merchandise was, this food product was of a merchantable quality. The quality of the food product was merchantable, usable and vendable, that is, salable and it was sold and used without any trouble until the Government comes along and says 'Why you haven't got the right kind of a package and you havn't got the label sufficiently displayed upon the front so that people perhaps know exactly what they are buying, you can't sell it that way.' All they had to do was re-package and re-label, which the seller or manufacturer promised to do or agreed to do at no cost to the plaintiff. That being the case, the court holds that there has been no breach of implied warranty, that is that the goods were of merchantable quality."

Whether or not the court erred in its instruction to the jury is not material if the judgment is correct, as the same would not be prejudicial.

The question here presented, we think, is whether or not under the Ohio law merchandise that was so packaged as to violate the United States laws and bore a trade name which the seller had no right to use makes the merchandise unmerchantable within the purview of the Uniform Sales Act, when the sale is made to a broker for the purpose of a resale, the same being shipped direct from the manufacturer to the purchaser without being handled by the seller. The defendant-appellee is urging that in the sale of this product there was

no implied warranty as defined in §8395 GC. Citing the case of **McMurray v. Vaughn's Seed Store, 117 Oh St 236.** This case deals with the sale by a dealer who is not the manufacturer of an article in its original package. The 4th syllabus here provides:

"Where a dealer sells an article of merchandise in the original package as it comes from the manufacturer, and the customer buys it knowing there has been no inspection by the dealer, there is no implied warranty, and, in the absence of an express warranty or representation, such dealer is not liable to the purchaser for damages caused by any deleterious substance in such merchandise the presence of which he had no knowledge."

This case has never been overruled, but was distinguished by the Supreme Court in the case of **Sickard v. Distributing Company, 133 Oh St 291,** where the plaintiff was permitted to recover damages from the distributor for personal injuries which she received as the result of using hair dye which she purchased from a retailer in an original package. The court distinguished the McMurray case, supra, on two grounds. The court say:

"The instant case is readily distinguishable from that case. There the product sold by the dealer was shipped direct to the buyer by the manufacturer, the dealer not having any opportunity for inspection. Moreover the article sold in bags was shredded cattle manure, a product not inherently dangerous as in the instant case. The defendant here was not a mere retailer who sold the hair dye to the plaintiff in package form."

In the case at bar all of the merchandise was shipped by the manufacturer and not by the defendant-appellee and the article was not inherently dangerous. It is obvious that both of the distinctions made in Sickard v. Distributing Company, supra, are applicable to the case at bar. The appellant cites the case of **Dow Drug Company v. Nieman, 57 Oh Ap 190,** and **Goljatowska v. Albrecht, 17 Abs 294,** but in each of these cases the purchaser was the ultimate consumer and in each he was injured personally by the article he purchased. The cases involving the sale of food in the original package by a retail dealer to a purchaser who was injured thereby, constitute an exception to the general rule that where the opportunities of inspection are equal there are no implied warranties as to the characteristics of the chattel.

In Williston on Sales, Section 242 (1948 Ed.) the author makes the statement in regard to warranties in the sale of food.

"But where one dealer buys from another, each having supposedly equal skill and knowledge, no warranty is implied." Citing Baker v. Kamantowsky, 188 Mich. 569, 155 N. W. 430, and Zillinski v. Potter, 195 Mich. 90, 161 N. W. 851. The same principle is set forth in 22 Amer. Jur. Section 109, p. 895, where the following statement appears:

"It is generally held that where the sale of provisions is by one merchant to another for the purpose of resale, there arises no implied warranty of soundness or wholesomeness. In selling provisions as articles of merchandise which the buyer does not intend to consume, but to sell again, the doctrine of caveat emptor applies. There is a very plain distinction between selling provisions for domestic use and selling them as articles of merchandise which the buyer does not intend to consume, but to sell again. Sales of provisions as articles of merchandise for resale are usually made in large quantities and with less opportunity to know the actual condition of the goods than when they are sold by retail. When provisions are not sold for immediate consumption, there is no more reason for implying a warranty of soundness than there is in relation to sales of other articles of merchandise. Thus, in the case of the sale of beef packed in barrels for exportation or resale, and not for immediate consumption, no warranty of soundness is to be implied."

It is therefore our conclusion that there was no implied warranty in the sale of this product and the court's instruction to the jury that there had been no breach of the implied warranty was correct.

The judgment will be affirmed.

HORNBECK, PJ, WISEMAN, J, concur.

## ON MOTION TO CERTIFY RECORD

No. 4568. Decided November 14, 1951.

## OPINION

By THE COURT.

This is a motion to certify the record to the Supreme Court for the alleged reason that it is in conflict with the case of **Dow Drug Company v. Nieman, 57 Oh Ap 190,** and **Goljatowska v. Albrecht, 17 Abs 294.** These two cases were discussed in the opinion and distinguished from the facts in the case at bar.

The motion will be overruled.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.